UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

BEINVILLE HAMILTON ALEXANDER,

        Petitioner,                      Case No. 1:15-cv-1008

v.                                                Honorable Robert J. Jonker

CARMEN D. PALMER,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner Beinville Hamilton Alexander is presently incarcerated at the Thumb Correctional Facility in Lapeer, Michigan. On June 13, 2012, an Oakland County Circuit Court jury, after a three day trial and an hour of deliberation, convicted Petitioner of armed robbery, MICH. COMP. LAWS § 750.529, possession of a loaded firearm in a vehicle, MICH. COMP. LAWS § 750.227c, and possession of a firearm during commission of a felony, MICH. COMP. LAWS § 750.227b. On July 17, 2012, the court sentenced Petitioner, as a habitual offender-fourth offense, MICH. COMP. LAWS § 769.12, to 9 to 40 years imprisonment for armed robbery, concurrent to 2 to 15 years imprisonment for possession of a loaded firearm in a vehicle, consecutive to 5 years imprisonment for felony firearm.

Petitioner appealed his convictions to the Michigan Court of Appeals. The court of appeals affirmed Petitioner's convictions by unpublished opinion dated March 6, 2014. *People v. Alexander*, No. 311437, 2914 WL 891043 (Mich. Ct. App. Mar. 6, 2014). Petitioner applied for

leave to appeal to the Michigan Supreme Court. On September 5, 2014, that court denied leave. *People v. Alexander*, 852 N.W.2d 628 (Mich. 2014). Petitioner did not apply to the United States Supreme Court for a writ of certiorari.

Petitioner filed his habeas petition (ECF No. 1), on September 29, 2015, raising the following issues:

> I. Petitioner was not given notice that his call to attorney's office would be recorded.
>
> II. Petitioner's 6th Amendment right to counsel was denied, depriving him of due process.
>
> III. Petitioner's 4th and 6th Amendment [rights] were violated, along with Title III, 18 U.S.C. § 2510-2520.

(Pet., ECF No. 1, PageID.6-9.) Although the petition identifies three issues, the first and third issue are directed to a telephone conversation, overheard and recorded by the police, between Petitioner and his attorney. In his brief (ECF No. 3), Petitioner distills those two issues (Issue I and Issue III) down to one and clarifies the other issue (Issue II) as follows:

> 1. . . . [T]he trial court err[ed] in denying the defendant's motion to suppress statements that he made to his lawyer's secretary and to Detective Moore[.]
>
> 2. . . . Defendant's waiver of counsel was not a knowing, voluntary and intelligent waiver of counsel and [he was] thus deprived of this constitutional right to counse[l].

(Br. in Support of Pet., ECF No. 3, PageID.18.) The Court will address the issues raised in the petition as Petitioner has clarified them in his brief.

On April 15, 2016, Respondent filed an answer to the petition, (ECF No. 8.), along with the state-court record, pursuant to Rule 5, Rules Governing § 2254 Cases, (ECF No. 9).[1] Petitioner filed his reply on May 31, 2016. (ECF No. 10.)

Upon review and applying the standards required by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA), I find that Petitioner's claims are without merit. Accordingly, I recommend that the petition be denied.

**Factual background**

The Michigan Court of Appeals summarized the underlying facts as follows:

> The victim parked his car in a public lot during the early morning hours of June 19, 2011. As he walked out of the parking lot, defendant pressed a gun into the victim's back and robbed him. The victim thereafter flagged down a police car and pointed out defendant walking away. The officer observed defendant approach a vehicle, open a rear door, close it, and continue walking away. The vehicle was later stopped, and defendant was found in the back seat along with a pistol, identified by the victim as the same one pressed into his back, and a loaded shotgun.

(Mich. Ct. App. Op., ECF No. 9-11, ECF No. 337.) The summarized facts do not convey how quickly the events transpired. The victim testified that he took just a few steps after he was robbed before he saw and flagged down the police officer. (Trial Tr. III, ECF No. 9-9, PageID.293.) The officer, in his vehicle, chased Petitioner, on foot. (Trial Tr. I, ECF No. 9-7, PageID.236-239.)

---

[1] The Rule 5 materials include several transcripts of the trial court proceedings. The transcripts shall be referenced as follows:

| | |
|---|---|
| Preliminary Examination Transcript | (Prelim. Examination Tr., ECF No. 9-2, PageID.__) |
| January 25, 2012 Motion Hearing Transcript | (Mot. Hr'g Tr., ECF No. 9-3, PageID.__) |
| March 21, 2012 *Walker* Hearing Transcript | (*Walker* Hr'g Tr., ECF No. 9-4, PageID.__) |
| April 4, 2012 Pretrial Hearing Transcript | (Pretrial Hr'g Tr. I, ECF No. 9-5, PageID.__) |
| April 25, 2012 Pretrial Hearing Transcript | (Pretrial Hr'g Tr. II, ECF No. 9-6, PageID.__) |
| June 11, 2012 Trial Transcript (Volume 1) | (Trial Tr. I, ECF No. 9-7, PageID.__) |
| June 12, 2012 Trial Transcript (Volume 2) | (Trial Tr. II, ECF No. 9-8, PageID.__) |
| June 13, 2012 Trial Transcript (Volume 3) | (Trial Tr. III, ECF No. 9-9, PageID.__) |
| July 17, 2012 Sentencing Transcript | (Sentencing Tr., ECF No. 9-10, PageID.__). |

Petitioner traveled only a few hundred feet before he climbed into a vehicle driven by his son. (*Id*.) The officer apprehended Petitioner before he had even closed the car door. (*Id*.) Mere minutes passed between Petitioner poking the gun into his victim's back and Petitioner's apprehension.

A significant portion of the trial testimony related to the post-arrest collection of evidence, including interviews of Petitioner and his son at the police station. The Court of Appeals summarized those events as follows:

> At the police station, defendant admitted in writing to a detective that he robbed the victim. Defendant subsequently asked to call his attorney. Defendant was allowed to use the telephone at the booking desk in the police station, which was described as being a high traffic area, with at least two officers within earshot of the telephone. While on the telephone with his attorney's secretary, defendant once again admitted to committing the crime, and further indicated that he was not concerned with the officers standing around him because he did not want to hide anything. Defendant did not cover his mouth, whisper, or ask for privacy.

(Mich. Ct. App. Op., ECF No. 9-11, ECF No. 337.) The testimony of the victim and the arresting officer was sufficient to warrant the jury's determination of guilt. Petitioner's written admission that he committed the crime following his spoken admission during his initial police station interview certainly bolstered that testimony. Petitioner contends that the interview admissions and written statement should have been suppressed because he had requested and been denied counsel. Petitioner's telephone admission, as overheard by nearby police officers and recorded by the police, provided additional support. Petitioner contends the telephone admissions and recording should have been suppressed because it violated his right to privately confer with counsel as well as Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq*. (herein the "federal eavesdropping statute").

Petitioner raised his suppression arguments, unsuccessfully, in a pretrial *Walker* hearing[2] on March 21, 2012. (*Walker* Hr'g Tr., ECF No. 9-4.) Shortly after the *Walker* hearing, Petitioner's counsel informed the trial court that Petitioner wanted to represent himself at trial. (Pretrial Hr'g Tr. I, ECF No. 9-5, PageID.195-196.) The trial court afforded Petitioner some time to consider that decision. (Pretrial Hr'g Tr. II, ECF No. 9-6, PageID.206.) Petitioner wanted new counsel; the court refused because Petitioner was already on his third appointed counsel. (*Id.*) The court reviewed with Petitioner, and Petitioner acknowledged, the potential penalties he would face if he were found guilty as well as the expectations he would have to meet. (*Id.*, PageID.206-208.) The court permitted Petitioner to represent himself and directed Petitioner's counsel to continue in a standby role. (*Id.*, PageID.208.) Petitioner did a creditable job representing himself at trial and availed himself of counsel's assistance when necessary.

## Discussion

This action is governed by the AEDPA. *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was

---

[2] A *Walker* hearing is conducted in accordance with *People v. Walker*, 132 N.W.2d 87 (1965), which requires trial courts, not juries, to determine the voluntariness of confessions. At such a hearing:

> the defendant may take the stand and testify for the limited purpose of making of record his version of the facts and circumstances under which the confession was obtained. . . . [B]y so doing defendant does not waive his right to decline to take the stand on trial in chief, if retrial is ordered. Neither does he waive any of the other rights stemming from his choice not to testify.

*Id.* at 91.

adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal

court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

I. <u>Voluntary nature of Petitioner's interview and written statement</u>

Petitioner claims that his interview and the written statement he prepared as a result of the interview should have been suppressed because they followed his request for counsel, a request that was ignored by police.

The Fifth Amendment of the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that, in order to protect an individual's Fifth Amendment privilege against self incrimination, when an individual is in custody, law enforcement officials must warn the suspect before his interrogation begins of his right to remain silent, that any

statement may be used against him, and that he has the right to retained or appointed counsel. *Id.* at 478-79; *see also Dickerson v. United States*, 530 U.S. 428, 435 (2000); *Stansbury v. California*, 511 U.S. 318, 322 (1994). In *Edwards v. Arizona*, 451 U.S. 477 (1981), the Supreme Court extended *Miranda*'s declaration of a custodial suspect's right to counsel by holding that, after the suspect has invoked his right to counsel, the police may not reinitiate questioning without counsel present, unless the suspect initiates further questioning. *Id.* at 484-85; *see also Arizona v. Roberson*, 486 U.S. 675, 680 (1988) (citing *Miranda*, 384 U.S. at 474). The rule is designed to prevent police "'badgering' or 'overreaching' – explicit or subtle, deliberate or unintentional – [that] might otherwise wear down the accused and persuade [the suspect] to incriminate himself." *Smith v. Illinois*, 469 U.S. 91, 98 (1984).

Determining whether a custodial statement is improper after the suspect has invoked his right to counsel requires a two-part inquiry:

> First, courts must determine whether the accused actually invoked his right to counsel. . . . Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked.

*Smith*, 469 U.S. at 95. *See also Van Hook v. Anderson*, 488 F.3d 411, 416 (6th Cir. 2007) (en banc). Under the first inquiry, the court must determine whether the suspect unambiguously requested counsel. *Van Hook*, 488 F.3d at 414 (citing *Davis v. United States*, 512 U.S. 452, 458 (1994)).

The Michigan Court of Appeals concluded that Petitioner's claim failed at the first step:

> Next, defendant argues that his *Miranda* waiver was not knowing, intelligent, and voluntary because he had requested counsel before the waiver and was extremely intoxicated at the time of the waiver. "We review de novo a trial court's determination that a waiver was knowing, intelligent, and voluntary." *People v.*

> *Gipson*, 787 N.W.2d 126, 129 (2010). Further, "we review a trial court's factual findings for clear error and will affirm the trial court's findings unless left with a definite and firm conviction that a mistake was made." *Id.* "Statements of an accused made during custodial interrogation are inadmissible unless the accused voluntarily, knowingly, and intelligently waived his or her Fifth Amendment rights." *Id.* "An accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police." *People v. Paintman*, 315 N.W.2d 418, 420 (1982) (quotation marks and citation omitted; emphasis omitted) [quoting *Edwards*, 451 U.S. at 477] . . . .
>
> Defendant insists that he asked for counsel before waiving his rights under *Miranda*. Two officers, however, testified that defendant made no such request, and the trial court found the officers' testimony credible and defendant's version of the events not credible. Based on the officers' testimony, we are not "left with a definite and firm conviction that a mistake was made" with respect to that finding. *Gipson*, 787 N.W.2d at 129. Because the record does not support defendant's allegation that he asked for counsel, his argument regarding the voluntariness of his statement is without merit. *See Paintman*, 315 N.W.2d at 420

(Mich. Ct. App. Op., ECF No. 9-11, PageID.342.)

The analysis of the court of appeals is neither contrary to nor an unreasonable application of the clearly established federal law cited above. Moreover, the determination of facts upon which the analysis is based is reasonable in the light of the evidence offered at the *Walker* hearing. (*Walker* Hr'g Tr., ECF No. 9-4.) Critically, the state court's determination that Petitioner was not credible when he claimed that he requested counsel is presumed to be correct; Petitioner can only rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. He has failed to carry his burden.

II. <u>Petitioner's telephone conversation with his lawyer's secretary</u>

Petitioner challenges the trial court's failure to suppress the statements he made during his telephone conversation with his lawyer's administrative assistant. Petitioner contests the

- 9 -

admission of his statements generally as violative of his Sixth Amendment right to counsel. Petitioner contests the admission of the recording of his telephone conversation as violative of the federal eavesdropping statute.

### A. Sixth Amendment violation

Petitioner contends that admitting into evidence a recording of his telephone conversation with an administrative assistant from his attorney's office had the effect of trampling his Sixth Amendment right to counsel. The Sixth Amendment provides that a criminal defendant shall have the right to the assistance of counsel for his defense. U.S. Const. amend. VI. The right to assistance of counsel includes the right to confer with counsel. *Geders v. United States*, 425 U.S. 80, 88-89 (1976); *Weatherford v. Bursey*, 429 U.S. 545, 563 (1977).

Petitioner relies on *Weatherford*: "The Supreme Court has made clear that in order to establish a violation of the Sixth Amendment an accused must not only show that his conversation with counsel [was] monitored or overheard but also that the information gained was used to prejudice his defense." (Brief in Support of Pet., ECF No. 3, PageID.21.) Petitioner claims that *Weatherford* requires a finding of prejudice where "'the overheard conversations have produced, directly or indirectly, any of the evidence offered at trial.'" (*Id.*) (quoting *Weatherford*, 429 U.S. at 552).

There can be no question that the overheard conversation in Petitioner's case directly produced evidence offered at trial. The prosecutor played the recording of the conversation during opening argument and during the testimony of Officer Goebel. (Trial Tr. I, ECF No. 9-6, PageID.232, 257.) The recording was admitted into evidence. (Trial Tr. III, ECF No. 9-8, PageID.301.) Moreover, there can be little question that the content of the recording was

detrimental to Petitioner. Although there is no transcript of the recording in the record, Respondent reproduced some of the content of the conversation, derived from the appellate briefs, in the answer in opposition to the petition:

> The tape of the phone call was played for the judge. 3/21/12 EH at 56 During the phone call, someone answered the phone, "Hello, Attorney Ken Karasick's office." The defendant then gave his name, told the person on the other end of the phone, who did not identify herself, that he was in jail. When the individual asked him what he was in jail for he said the following:
>
>> I made an idiot ass of things. My rent was overdue and I messed around and pulled a gun on a guy and asked for money, OK. That's wasn't a fuckin' smart idea. I know it. I'm a dumb ass for that and I apologize. The guy didn't get hurt or anything. [indecipherable] money back, but I need for Ken or somebody to come and see me so we can get this thing going . . . .
>
> Later in the call, the individual on the line asked him "You're in the Ferndale Police?" and the defendant responded in the following fashion:
>
>> I'm with a Ferndale Police Officer, detective to my left and another officer, a sergeant in front of me. . . I'm not trying to hide anything from anybody. I just wanna. I just wanna have my chance. I know I messed up. . . In my mind I didn't know what to do and I panicked . . . .
>
> He again said that his son didn't have anything to do with it since his son had thought he was taking him to a strip club for father's day. He asked for Ken Karasick to be notified.

(Answer, ECF No. 8, PageID.60-61.) Certainly Petitioner's statements were inculpatory. Perhaps that is not surprising in that they followed a series of inculpatory statements and actions by Petitioner. Petitioner recognized that fact:

Prosecutor: Why did you tell the secretary . . . what you did, knowing that there's two police officers just within feet of you?

Petitioner: Well, basically, if you want to look at it like that, it wasn't nothing more than what I had already told him, if you're lookin' at it like that. It was a product from the first statement, so it wasn't nothin' added. It was a result for the first statement that was said.

- 11 -

> Prosecutor: Okay.
>
> Petitioner: But-but to know that , since you want to get to the-you know, that the cat was out the bag to-what I told him, it wasn't nothin' different.

(*Walker* H'rg Tr., ECF No. 9-4, PageID.186.)

The Michigan Court of Appeals concluded that Petitioner's communication with the administrative assistant was not a confidential communication protected by the attorney-client privilege:

> Defendant first argues that the trial court erred in admitting his confession over the telephone to the secretary. "The decision to admit evidence is reviewed for an abuse of discretion." *People v. Washington*, 664 N.W.2d 203, 205 (2003). MICH. COMP. LAWS § 767.5a(2) states that, "[a]ny communications between attorneys and their clients . . . are hereby declared to be privileged and confidential when those communications were necessary to enable the attorneys . . . to serve as such attorney." "The scope of the attorney-client privilege is narrow, attaching only to confidential communications by the client to his advisor that are made for the purpose of obtaining legal advice." *Augustine v. Allstate Ins Co*, 807 N.W.2d 77, 85 (2011) (quotation marks and citation omitted; emphasis added).
>
> For purposes of resolving the issue, we assume that the conversation between defendant and the secretary could be covered under the attorney-client privilege because the secretary was an agent of the attorney, and was acting to obtain factual information to enable the attorney to provide legal advice. *Reed Dairy Farm v. Consumers Power Co*, 576 N.W.2d 709, 711 (1998) (holding that the attorney-client privilege applies to agents of the attorney); *see also Grubbs v. K Mart Corp*, 411 N.W.2d 477, 480 (1987) (holding that the attorney-client privilege exists where a non attorney third party is present during a confidential conversation, in order to record the conversation to provide an accurate factual base from which the attorney might provide legal advice). Assuming there was an attorney-client privilege, it was waived because the conversation was not confidential as required by *Augustine*, 807 N.W.2d at 85. The facts are undisputed that defendant confessed to the crime, over the telephone, in a room with at least two officers within ear shot, and made no attempt to lower his voice or to ask for privacy. Defendant could have requested his attorney's presence at the jail rather than describing the crime so publicly. Defendant did not attempt to keep his conversation private and even indicated that he was not concerned about hiding it. Because "defendant failed to take reasonable precautions to keep his remark[s] confidential . . . the communication was not privileged." *People v. Compeau*, 625 N.W.2d 120, 122 (2001). Because the

>communication was not privileged, the trial court did not abuse its discretion in admitting defendant's verbal confession.

(Mich. Ct. App. Op., ECF No. 9-11, PageID.338.)

The court of appeals' resolution of the issue does not follow the analytical path of *Weatherford*, 429 U.S. at 545, but it is not contrary to *Weatherford* either. In *Weatherford*, the Supreme Court considered whether Bursey's Sixth Amendment right to counsel had been violated where Bursey had invited Weatherford, Bursey's co-defendant for a vandalism prosecution and--unbeknownst to Bursey--an undercover state law enforcement agent, to meetings between Bursey and his trial counsel. *Id.* at 547. Weatherford never communicated any of the information he learned during those meetings to the prosecutor, nor did Weatherford testify regarding those meetings; but, Weatherford did testify regarding the acts of vandalism and Bursey was convicted.

The matter came to the Supreme Court, not as a habeas petition relating to Bursey's conviction, but as a 42 U.S.C. § 1983 action. The federal district court entered judgment for the defendants. The Fourth Circuit Court of Appeals reversed, holding "'whenever the prosecution knowingly arranges and permits intrusion into the attorney-client relationship the right to counsel is sufficiently endangered to require reversal and a new trial.'" *Weatherford*, 429 U.S. at 549. The Supreme Court described the Fourth Circuit's holding as a *per se* rule. It was *per se* because prejudice did not matter, the confidential communication between Bursey and his counsel in Weatherford's presence, without knowing Weatherford was an undercover agent, established the violation. *Id.* at 550.

The Supreme Court flatly rejected the *per se* rule. It noted that its earlier decisions, including *Black v. United States*, 385 U.S. 26 (1966) and *O'Brien v. United States*, 386 U.S. 354

- 13 -

(1967), cases upon which Petitioner relies (Br., ECF No. 3, PageID.21), "did not hold that the Sixth Amendment right to counsel subsumes a right to be free from intrusion by informers into counsel-client consultations." *Id.* at 553; see also *Id.* at 554 ("Neither *Black*, *O'Brien*, *Hoffa*, nor any other case in this Court . . . furnishes grounds for [that] interpretation and application of the Sixth and Fourteenth Amendments . . . ."). On the other hand, the *Weatherford* court also rejected the rule proposed by Weatherford: "At the same time, we need not agree with petitioners that whenever a defendant converses with his counsel in the presence of a third party thought to be a confederate and ally, the defendant assumes the risk and cannot complain if the third party turns out to be an informer for the government who has reported on the conversations to the prosecution and who testifies about them at the defendant's trial." *Id.* at 554.

The *Weatherford* Court drew the line at intrusions that result in prejudice. Petitioner seizes upon that distinction, notes the obvious prejudice here, and concludes that nothing else is required to warrant a new trial. In leaping to that conclusion, Petitioner ignores the fact that he is jumping from a very different starting point than was Bursey (or O'Brien or Hoffa or Black, for that matter). Each of those defendants believed they were engaging in private attorney-client communications when they were overheard or recorded. That is not the case here.

Petitioner knew that police officers were within immediate earshot of his conversation, and he did not care, because "the cat was out the bag." (*Walker* H'rg Tr., ECF No. 9-4, PageID.186.) Even the Fourth Circuit *per se* rule rejected in *Weatherford* premised its determination of an intrusion on the fact that the agent did not reveal his identity. *Id.* at 550 ("[A]s the Court of Appeals applied the rule in this case, it would appear that if an undercover agent meets with a criminal defendant who is awaiting trial and with his attorney and if the forthcoming trial is

discussed *without the agent's revealing his identity*, a violation of the defendant's constitutional rights has occurred . . . .") (emphasis added). The very fact that the Michigan Court of Appeals relied upon in rejecting Petitioner's claim–that Petitioner knew he was making admissions within earshot of the police–defeats his claim to a Sixth Amendment violation under *Weatherford*.[3] Accordingly, the state court resolution of this issue is in no way contrary to *Weatherford*. Moreover, the factual determinations upon which the state court based its decision are well-supported on the record. Accordingly, Petitioner has failed to establish entitlement to habeas relief on this ground.

### B. Violation of the federal eavesdropping statute

Petitioner offers an alternative ground to support suppression of the telephone call recording: the conversation was intercepted from a wire transmission without his knowledge or consent in violation of the federal eavesdropping statute. If the recording of the telephone call violated Title III, the statute prohibits use of the contents as evidence in any trial. 18 U.S.C. § 2515. The Michigan Court of Appeals rejected Petitioner's claim:

> Defendant also argues that the trial court should not have admitted a recording of his telephone conversation because the recording of the conversation violated state and federal eavesdropping statutes. This argument is unpreserved and reviewed for plain error affecting substantial rights. [*People v. Carines*, 597 N.W.2d 130, 138-139 (1999).] Defendant asserts that his conversation was recorded in violation of both MICH. COMP. LAWS § 750.539 *et seq*. and 18 U.S.C. § 2510 *et seq*. [footnote omitted] Defendant is correct that violation of either statute results in the suppression of evidence obtained via that violation. 18 USC 2515; *People v. Warner*, 258 N.W.2d 385, 391-392 (1977) (opinion by Williams, J.). However, there was no violation of either eavesdropping statute. Both the federal and Michigan statutes require that a

---

[3]That does not mean that the police can defeat an accused's right to confer with counsel by staying within earshot of the accused all the time. That was simply not the situation Petitioner faced. As the court of appeals noted:

> Defendant could have requested his attorney's presence at the jail rather than describing the crime so publicly. Defendant did not attempt to keep his conversation private and even indicated he was not concerned about hiding it.

(Mich. Ct. App. Op., ECF No. 9-11, PageID.338.)

conversation be "private" in order to be protected. MICH. COMP. LAWS § 750.539c refers to a "private conversation." This Court has defined a private conversation as one that is "intended for or restricted to the use of a particular person or group or class of persons ... [and is] intended only for the persons involved." *People v. Stone*, 593 NW2d 680, 683 (1999) (quotation marks and citation omitted). Further, 18 U.S.C. § 2510(2) defines an "oral communication" as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation. . . ." For the reasons already discussed, defendant's conversation was not private. Defendant admitted as much during the conversation when he announced that he did not care who was listening and acknowledged officers standing nearby. Because the conversation was not private, as required under both statutory schemes, the eavesdropping statutes were not violated. MICH. COMP. LAWS § 750.539c; 18 U.S.C. § 2510(2). As such, defendant has failed to show plain error. *Carines*, 597 N.W.2d at 138-139.

(Mich. Ct. App. Op., ECF No. 9-11, PageID.341-342.)

The court of appeals' resolution of the issue with respect to the state statute is correct. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"

The court of appeals' resolution of the issue with respect to the federal eavesdropping statute, however, is incorrect. The federal eavesdropping statute protects three types of communications, two of which are relevant here: "'wire communication[s]' [meaning] any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire . . ." and "'oral communication' [meaning] any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under

circumstances justifying such expectation . . . ." 18 U.S.C. § 2510(1), (2).[4] It is unlawful to intercept wire or oral communications. 18 U.S.C. § 2511(1)(a). Interception "means the aural or other acquisition of the contents of any wire . . . or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

Petitioner's telephone conversation statements were captured in two ways, they were overheard by the police officers and they were recorded by the police department's equipment. When the officers overheard the conversation, the officers did not *intercept* anything because they did not use an electronic, mechanical, or other device. When the police department recorded the telephone conversation, it did *intercept* something. The Michigan Court of Appeals was correct that the Petitioner's communication fell outside of the statute's protection as an "oral communication" because the Petitioner lacked a subjective expectation of privacy and the circumstances rendered such an expectation unjustified. The court of appeals was wrong, however, when it concluded that the statute did not protect the communication at all. The communication remained a wire communication. For wire communications the expectation of privacy and its reasonableness are either legislatively presumed or simply not required. Nonetheless, to the extent the admission of the recording was an error,[5] it was a harmless error.

---

[4]The third type of protected communication is "electronic communication." 18 U.S.C. § 2510(12). The definition of "electronic communication" excludes "wire communication" and "oral communication." *Id.* Because Petitioner's statements fit the definition of "wire communication" and "oral communication," the statements do not constitute "electronic communication."

[5]There are exceptions to the suppression rule. *See, e.g., Adams v. City of Battle Creek*, 250 F.3d 980 (6th Cir. 2001); *United States v. Reed*, No. 2:15-cr-20221, 2016 WL 3102228 (W.D. Tenn. Jun. 2, 2016). Magistrate Judge Carter of the United States District Court for the Eastern District of Michigan penned a thorough report and recommendation examining the relevant authorities as applied to a fact situation similar to Petitioner's here. *United Sates v. Houston*, No. 1:13-cr-37, 2015 WL 1061971 (E.D. Tenn. Mar. 11, 2015). Because Petitioner was not provided notice that the telephone call would be recorded, it appears unlikely any of the exceptions would apply.

On habeas review, a court must assess harmlessness under the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), regardless of whether the state appellate court recognized the error and reviewed it for harmlessness. *See Hargrave*, 248 F. App'x at 728 (citing *Fry v. Pliler*, 551 U.S. 112, 129 S. Ct. 2321, 2328 (2007)); *see also Vasquez v Jones*, 496 F.3d 564, 574-75 (6th Cir. 2007). The *Brecht* standard requires the Court to consider whether the constitutional error in the state criminal trial had a "substantial and injurious effect" on the result. *Brecht*, 507 U.S. at 638. In determining whether the admission of evidence was harmless, a court must consider a number of factors, "'includ[ing] the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.'" *Hargrave*, 248 F. App'x at 728 (quoting *Van Arsdall*, 475 U.S. at 684).

Here, admission of the recording of the conversation was harmless because it was wholly duplicative of the testimony of the officer regarding the conversation. (*Walker* Hr'g Tr., ECF No. 9-4, PageID.172.) The officer's testimony regarding the conversation, in turn, was duplicative, by Petitioner's own admission, of Petitioner's written and recorded confession from the officer's interview. If the recording of the telephone conversation violated the federal eavesdropping statute such that the recording should have been suppressed, the failure to suppress the recording was harmless under the *Brecht* standard. Accordingly, Petitioner is not entitled to habeas relief.

**Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. See *Slack v. McDaniel*, 529 U.S. 473 (2000).


Date: May 15, 2017            /s/ Ellen S. Carmody
                              ELLEN S. CARMODY
                              United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).